# In the United States Court of Federal Claims

No. 14-437C
(Filed: July 22, 2016)

| | | |
|---|---|---|
| TWANYA L. BRASS, | ) ) ) | |
| Plaintiff, | ) ) | Equal Access to Justice Act, 28 U.S.C. § 2412; Government Position Not |
| v. | ) ) | Substantially Justified; Reasonable Attorney Fees; Multiple Attorneys |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |

*Barton F. Stichman*, Washington, DC, for plaintiff. *Wayne I. Pollack*, Philadelphia, PA, and *Edwin V. Woodsome, Jr.* and *Anna Do*, Los Angeles, CA, and *Thomas A. Moore* and *David M. Sonenshine*, Washington, DC, of counsel.

*William P. Rayel*, Commercial Litigation Branch, Civil Division, United States Department of Justice, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Reginald T. Blades, Jr.*, Assistant Director, for defendant. *LCDR Steven Gonzales*, General Litigation Division, Office of the Judge Advocate General, United States Navy, Washington, DC, of counsel.

**OPINION AND ORDER**

**FIRESTONE**, *Senior Judge*.

Pending before the court is a motion for attorneys' fees and costs filed by plaintiff Twanya L. Brass ("Ms. Brass") pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). Ms. Brass seeks $88,289.79 in attorneys' fees and $3,768.13 in litigation expenses. In her motion, Ms. Brass contends that she is entitled to an award of attorneys' fees and costs under the EAJA on the grounds that she was a prevailing party

in <u>Brass v. United States</u>, 120 Fed. Cl. 157 (2015), and that the position of the United States ("the government") in the case was not substantially justified. She further asserts that the hours and costs claimed are reasonable and supported. In response, the government argues that its position in the case was substantially justified and thus fees should not be awarded. In the alternative, the government contends that Ms. Brass's fee request is not supported and not commensurate with the relief awarded and thus any EAJA award should be significantly reduced. For the reasons below, Ms. Brass's motion for EAJA fees and costs is **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.   FACTUAL BACKGROUND

The history of Ms. Brass's case is detailed in <u>Brass v. United States</u>, 120 Fed. Cl. at 157. At issue was whether the United States Department of the Navy ("the Navy") erred when it found that Ms. Brass was entitled only to a 10% disability rating, rather than a 30% disability rating, when she was discharged from the Navy in 2008. With a 10% disability rating, Ms. Brass was entitled to a one-time payment of $51,414. With a 30% disability rating, Ms. Brass would be entitled to a monthly disability payment, medical care for herself and for her minor children, and military commissary and exchange privileges.

Ms. Brass served on active duty in the Navy from September 9, 1998 to May 31, 2008 as an Operations Specialist, reaching the rank of Second Class Petty Officer. In June 2006, Ms. Brass was assigned to the USS Mobile Bay, a guided missile cruiser. Shortly thereafter, in July 2006, Ms. Brass began to have difficulty at work. In April 2007, an Independent Duty Corpsman referred her to the Psychiatry Clinic at Naval

Branch Health Clinic Naval Station San Diego because she had expressed thoughts of hurting others, including coworkers and members of her immediate family.

A Navy doctor diagnosed Ms. Brass as suffering from Depressive Disorder NOS and assigned her a Global Assessment Functioning ("GAF") rating of 48, a rating which suggests some "serious impairment in social, occupational, or school functioning[.]" American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision).  As a result of this diagnosis, Ms. Brass was not considered fit for full duty and was placed on limited duty.  This meant that she could not participate in deployments, night duties, or the handling of firearms or heavy machinery.

Ms. Brass began to show some improvement following therapy and prescription medication and was reevaluated in October 2007 to determine whether she was fit to return to full duty.  While the doctor found that she reported an improvement in her depression, the doctor also noted that she had ongoing interpersonal issues at work and was having difficulty addressing those problems.  The doctor reaffirmed the earlier diagnosis and found that Ms. Brass was still unfit for full duty.

In October 2007, Ms. Brass was evaluated by a Medical Evaluation Board ("MEB"), which recommended a medical discharge because of the "high likelihood of an exacerbation of symptoms in an operational environment."  Administrative Record ("AR") 31.

On January 9, 2008, an informal Physical Evaluation Board ("PEB") determined that Ms. Brass's depressive disorder was an unfitting condition and assigned her a disability rating of 10%.  On February 13, 2008, a second informal PEB also assigned

3

Ms. Brass a disability rating of 10%. In making its disability determination, the Navy applied its own manual interpreting the Veterans Administration Schedule for Rating Disabilities ("VASRD").

> The VASRD provided the following standard for a 30% disability rating:
>
> Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

38 C.F.R. § 4.130. The Navy Disability Evaluation Manual ("Navy manual") provided the following gloss on the VASRD standard:

> Since the 30% rating in the VASRD requires ". . . intermittent periods of inability to perform occupational tasks," the following definition of vocational functional impairment is provided: Symptoms of a psychiatric condition causing a period or periods of "inability to perform occupational tasks" should be of such severity as to result in a pattern of job loss, demotion, disqualification from obtaining employment, or inability to engage in or maintain reasonable employment. "Reasonable employment" is determined, in part, by considering the service member's premorbid vocational adjustment, education, and accomplishments.

Secretary of the Navy Instruction ("SECNAVINST") 1850.4E, Enclosure 9, § 9011(k)(1)(b).[1] The Navy manual thus required symptoms that would result in a pattern of job loss, demotion, or inability to maintain employment in order to meet the

---

[1] The 10% disability rating standard in the VASRD states: " Occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress or symptoms controlled by continuous medication." 38 C.F.R. § 4.130. There is no Navy manual description for the 10% disability rating.

4

"intermittent periods of inability to perform occupational tasks" requirement in the VASRD.

Ms. Brass left the Navy in May 2008. On July 9, 2008, the United States Department of Veterans Affairs ("the VA") assigned Ms. Brass a 30% disability rating based on evaluations of her depressive disorder conducted before she left the Navy and other evidence. Following a reevaluation in 2010, the VA determined that Ms. Brass's disability rating for depression should continue at 30%.

On October 11, 2011, Ms. Brass submitted an application to the Physical Disability Board of Review ("PDBR"), pursuant to the Wounded Warrior Act, Pub. L. No. 110-181, title XVI (2008), for review of the Navy's 10% disability rating determination. The Wounded Warrior Act clarified that, in making a disability rating determination, the Secretary of the branch concerned is authorized to apply criteria in addition to the VASRD "if the utilization of such criteria will result in a determination of a greater percentage of disability than would be otherwise determined through the utilization of the [VASRD]." 10 U.S.C. § 1216a(a)(2). The Wounded Warrior Act also established the PDBR to review disability determinations for "covered individuals" who were separated from the military between September 11, 2001 and December 31, 2009 due to a medical condition with a disability rating of 20% or less, and found not eligible for retirement. 10 U.S.C. § 1554a(a)-(b). Under the Act, covered individuals are authorized to petition the PDBR to review the findings and decisions of a PEB based upon existing military records and other evidence presented. Id. at § 1554a(c)(1)-(2). Following its review, the PDBR may recommend to the Secretary concerned changes to

the covered individual's disability rating and recharacterization of the covered individual's separation to "retirement for disability." Id. at § 1554a(d). The Wounded Warrior Act further provides that the Secretary concerned may correct the covered individual's military records in accordance with the PDBR recommendation. Id. at § 1554a(e)(1); see also Department of Defense Instruction 6040.44, Enclosure 3, ¶ 6(d). The Secretary is given final decision-making authority.

Upon its review of Ms. Brass's case, the PDBR, on June 29, 2012, recommended based on the VASRD standard that Ms. Brass's disability rating be revised to 30% and that her separation be recharacterized to permanent disability retirement. The PDBR noted that a 30% disability rating was appropriate because Ms. Brass had reported daily depression at her initial VA exam before leaving the Navy and that her condition, while improving, still resulted in moderate occupational impairment. AR 16-17. On July 11, 2012, a senior medical advisor for the Secretary of the Navy Council of Review Boards ("CORB") reviewed the PDBR recommendation and concluded that "the available evidence appears insufficient to warrant recommending the requested relief." AR 12. In particular, the advisor found that the VA determination from 2008 contained a "weak" explanation and stated that it "did not establish the necessary 'intermittent periods of inability to perform occupational tasks'" at the time of her discharge. Id. The advisor also found that the most likely cause of plaintiff's issues was not depression but rather

"Chronic (ACDU) Adjustment Disorder," an unratable condition that the MEB, PEB, and VA had not considered.[2]

On July 12, 2012, the CORB Director sent a memorandum to the Assistant Secretary recommending non-concurrence with the PDBR recommendation, based on the review by the CORB senior medical advisor. On July 24, 2012, the Secretary rejected the PDBR recommendation and maintained Ms. Brass's 10% disability rating.

## II.     REMAND DECISION AND POST-REMAND PROCEEDINGS

As discussed above, the Wounded Warrior Act made clear that the Secretary of the Navy must use the VASRD in making a disability rating unless the utilization of other criteria would result in a more generous rating. The Act clarified that other criteria can be used, "if the utilization of such criteria will result in a determination of a greater percentage of disability than would be otherwise determined through the utilization of the [VASRD]." 10 U.S.C. § 1216a(a)(2).

It was undisputed that the Navy applied the Navy manual, SECNAVINST 1850.4E, Enclosure 9, § 9011(k)(1)(b), in determining Ms. Brass' disability rating in 2008. The court found that the Navy appeared to have used it again in 2012 when it reviewed the PDBR's recommendation, based on the statement that the PDBR had relied on the VA examination and "did not establish necessary 'intermittent periods of inability

---

[2] Ms. Brass had also been evaluated for a disability based on migraine headaches, which the VA found to be 0% disabling. The PDBR did not recommend any change with regard to the 0% disability rating attributable to her migraine headaches. The CORB senior medical advisor also concluded that Ms. Brass was able to maintain a job while suffering from difficulties caused by migraines.

7

to perform occupational tasks." AR 12.  In Ms. Brass's challenge in this court, she argued that the definition of "intermittent periods of inability to perform occupational tasks" in the Navy manual was inconsistent with the VASRD, and thus unlawful, and that she had demonstrated that she was entitled to a 30% disability rating under the VASRD. Specifically, Ms. Brass argued that the Navy manual required evidence that the qualifying condition would result in significant job interference, whereas the VASRD only spoke of an "occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily)." Ms. Brass argued that if the Navy had applied the VASRD standard, there would not have been any difference between the Navy's and the VA's determinations.

The court agreed with Ms. Brass that the Navy manual created more stringent criteria for a 30% disability rating than the VASRD and thus an evaluation relying on the Navy manual was contrary to law.  The court ordered a remand because it appeared that the Secretary's decision to reject the PDBR was based in part on the definition contained in the Navy manual.  The court ordered the Secretary to determine whether or not Ms. Brass was entitled to a 30% disability rating based on the VASRD criteria alone.  On remand, the Navy accepted the recommendation of the PDBR to increase Ms. Brass's disability rating from 10% to 30%, effective the date of her discharge (ECF No. 22).  The parties agreed that the Navy's decision on remand afforded Ms. Brass complete relief in this case (ECF No. 24).  Pursuant to the parties' request, the court dismissed the case with prejudice on September 21, 2015 (ECF No. 29).  Judgment was entered on September 25, 2015 (ECF No. 30).

On December 23, 2015, Ms. Brass filed the pending motion for attorneys' fees and costs pursuant to the EAJA (ECF No. 31). The government filed its response on February 25, 2016 (ECF No. 36) and Ms. Brass filed her reply in support of the motion on May 6, 2016 (ECF No. 43). The court heard oral argument on July 19, 2016.

**III.   STANDARD OF REVIEW**

Under the EAJA, an eligible "prevailing party" is entitled to reasonable attorneys' fees and other expenses incurred by the party in a civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A), (2)(A); see also Comm'r, Immigration & Naturalization Serv. v. Jean, 496 U.S. 154, 158 (1990); United Partition Sys., Inc. v. United States, 95 Fed. Cl. 42, 49 (2010). "The EAJA applicant has the burden of proving he is a prevailing party." Davis v. Nicholson, 475 F.3d 1360, 1366 (Fed. Cir. 2007) (citing RAMCOR Servs. Grp., Inc. v. United States, 185 F.3d 1286, 1288 (Fed. Cir. 1999)). However, "the government bears the burden of proving its position was substantially justified." Libas, Ltd. v. United States, 314 F.3d 1362, 1365 (Fed. Cir. 2003) (quoting Neal & Co. v. United States, 121 F.3d 683, 686 (Fed. Cir. 1997)). Whether or not the position of the United States was substantially justified shall be determined on the basis of the record, including the record with respect to the underlying agency action. 28 U.S.C. § 2412(d)(1)(B). In order to be "substantially justified," the government's position must be "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." Norris v. SEC, 695 F.3d

1261, 1265 (Fed. Cir. 2012) (per curiam) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

## IV.   DISCUSSION

In her briefs in support of her motion for fees and costs, Ms. Brass alleges that she has met the prerequisites for recovery under the EAJA and that her request for 462.8 hours of fees, which amounts to $88,289.79, and $3,768.13 in costs is justified. The government opposes Ms. Brass's motion for attorneys' fees and costs on the grounds that the government's position was substantially justified. In the alternative, the government argues that the amount requested is unreasonable and should be significantly reduced.[3]

### A.   The Government's Position was not Substantially Justified.

The government argues that Ms. Brass is not entitled to EAJA fees and costs on the grounds that the Navy's initial 10% disability rating was substantially justified. In this connection, the government asserts that the conclusions of the CORB senior medical advisor and the CORB Director and the decision of the Secretary to reject the PDBR's recommendation were supported by evidence in the record. The government argues that the Navy could reasonably have found, without relying on the Navy manual, that Ms. Brass did not have the "intermittent periods of inability to perform occupational tasks" necessary for a 30% disability rating under the VASRD. Def.'s Resp. 15 (citing 38 C.F.R. § 4.130). The government also argues that the Navy manual is consistent with

---

[3] The government initially challenged whether Ms. Brass was eligible to obtain fees based on her financial status and her agreement to pay any fees she obtained to her pro bono attorneys. Those issues have been resolved by stipulation and it is now agreed that Ms. Brass is eligible to receive an EAJA award. See ECF Nos. 41, 47.

the VASRD. The government asserts that "periods of inability to perform occupational tasks," as used in the VASRD, can be reasonably interpreted to require symptoms severe enough to cause extended reductions in earning capacity, such as job loss or demotion. Id.

Ms. Brass asserts first that the government's position with regard to the Navy manual was not substantially justified because it led to results less generous than the VASRD and was thus invalid as a matter of law. Ms. Brass further argues that to the extent the government is defending its 10% disability rating decision and rejection of the PDBR decision based on the application of the 10% VASRD standard, the government's position was not substantially justified. Specifically, Ms. Brass argues that all of the Navy's reviewers had relied on the Navy manual and thus all of the reviews were tainted. According to Ms. Brass, the government cannot now justify a 10% disability rating under the VASRD standard based on an analysis the Navy did not undertake.

The court agrees with Ms. Brass that the government's position in this case was not substantially justified. The central issue in the case was whether the standard for a 30% disability rating under the Navy manual was more stringent than the standard for that rating under the VASRD. The court found that the examples provided by the VASRD for a 30% disability rating involve far less extreme job difficulties than those described in the Navy manual. The court found that the VASRD standard for a 30% disability rating contemplates that the person being evaluated will be "generally functioning satisfactorily," and will have only the occasional decrease in work efficiency and intermittent periods of work performance problems. 38 C.F.R. § 4.130. The

VASRD standard for a 30% disability rating does not require evidence of symptoms sufficient to result in a pattern of job loss, demotion, or inability to engage in or keep a job. Accordingly, the court found that the Navy's reliance on its manual was improper and contrary to the requirements of the Wounded Warrior Act. See 10 U.S.C. § 1216a(a)(2). It was for this reason that the court required the Navy to again review Ms. Brass's rating and when the Navy did another rating, using only the VASRD standard, the Navy adopted the PDBR's 30% disability rating recommendation. Thus, the only ratings not tainted by an improper legal standard are the PDBR's 30% disability rating and the VA's 30% disability rating. The government cannot justify a 10% disability rating based on the VASRD alone because there is no record to support a 10% disability rating based on the VASRD alone. In short, because the Navy's application of a more stringent standard was inconsistent with the plain language of the Wounded Warrior Act, 10 U.S.C. § 1216a(a)(2), the government's legal position was not substantially justified and the Navy's initial 10% disability rating based on an improper standard was not substantially justified. Accordingly, Ms. Brass has established a claim for EAJA fees and costs.

   **B. Ms. Brass's Requested Attorneys' Fees Must be Reduced.**

  Having determined that Ms. Brass has satisfied the prerequisites for EAJA fees and costs the court now turns to the question of the proper calculation of that amount. This includes a review of: (1) the hourly rate, (2) the reasonableness of the hours expended, (3) the reasonableness of the claimed costs, and (4) plaintiff's success on the merits.

### 1. Hourly Rate

While EAJA fees are capped by statute at an hourly rate of $125, courts may permit increases for cost of living or other special factors. 28 U.S.C. § 2412(d)(2)(A)(ii). In this case, the parties have agreed that Ms. Brass is entitled to an upward cost of living adjustment to an hourly rate of $190.95 for attorneys' fees.[4]

### 2. Allowable Hours

The government argues that Ms. Brass's petition for up to 462.8 hours of work is not justified.[5] The government argues that the requested hours should be reduced because the descriptions in the time entries Ms. Brass provided are so vague that the court cannot determine whether the claimed hours were reasonably expended. Def.'s Resp. 20. The government argues that time entries such as "[r]esearch and writing for appellate brief" and "researched issues regarding . . . case" have been held to be too vague. Id. (citing Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 970 (D.C. Cir. 2004); Greenhill v. United States, 96 Fed. Cl. 771, 781-82 (2011)). The government also argues that much of the work performed appears to have been duplicative and that there is not

---

[4] Ms. Brass initially sought hourly rates for attorneys' fees of $196.98 for 2014 and $197.03 for 2015, as well as an hourly rate of $150 for a law clerk. Pl.'s Mot. 15-16. In her reply, Ms. Brass agrees to the single, lower hourly attorney rate of $190.95 proposed by the government. Pl.'s Reply 13. The government does not dispute Ms. Brass's proposed rate for the law clerk. Def.'s Resp. 24.

[5] In her reply, Ms. Brass agrees to exclude 18.4 attorney hours that the government challenged on the grounds that the time entries reference discussions with co-counsel that are not listed in both representatives' time entries. Pl.'s Reply 13-14. In addition, Ms. Brass reduces the number of hours proposed for the law clerk to 2.0 hours at $150 per hour, matching the government's proposal for that individual. Def.'s Resp. 24; Pl.'s Reply 14.

enough detail in any timesheets to show what precise work each of the nine attorneys working on the case added to the work of the counsel of record. The government suggests that the court limit Ms. Brass's attorney fees recovery to 174.9 hours for attorney time and 2 hours of law clerk time. Elsewhere in its brief, the government states that "[t]he time entries do not demonstrate that it was reasonable to spend more than 70 hours researching, drafting, and revising the . . . complaint . . . 125 hours researching, drafting, and revising Ms. Brass's cross-motion" and "40 hours to researching, drafting, and revising her . . . reply." Def.'s Resp. 21. The government further asserts that the 30.1 hours identified for preparing for the oral argument was not justified. Similarly, the government argues that Ms. Brass has not shown why 22.7 hours were needed to draft the EAJA motion. Def.'s Resp. 22. Regarding Ms. Brass's EAJA motion, the government argues that time spent drafting or completing itemized lists should be excluded as "secretarial work." Def.'s Resp. 22 (citing Role Models, 353 F.3d at 973; Greenhill, 96 Fed. Cl. at 781 n.10). The government also argues that the claimed hours in "this routine military disability pay case" are excessive in light of EAJA awards in other military pay cases of similar or greater complexity. Def.'s Resp. 23-24 (citing Wollman v. United States, No. 12-125C, 2015 WL 4939619, at *1, *5 n.3 (Fed. Cl. Aug. 18, 2015) (137.2 hours); Loomis v. United States, 74 Fed. Cl. 350 (2006) (185 hours); Gonzales v. United States, 44 Fed. Cl. 764 (1999) (126 hours)).

With regard to the time entries that the government claims are too vague to compensate, Ms. Brass argues that the level of detail she provides has been approved by other courts. Pl.'s Reply 18-19 (citing Nat'l Ass'n of Concerned Veterans v. Sec'y of

14

Def., 675 F.2d 1319, 1331 (D.C. Cir. 1982); Scarborough v. Nicholson, 19 Vet. App. 253, 266 (2005)). With regard to the time spent preparing for oral argument, Ms. Brass states that 30 hours of attorney time is reasonable and points out that the government cites no authority to the contrary. Pl.'s Reply 19. With regard to the hours spent drafting the EAJA motion, Ms. Brass asserts that the claimed time was devoted to amending the descriptions to provide more detail, which could only have been done by an attorney familiar with this case, and exercising billing judgment by eliminating hours, which the government does not appear to challenge. Pl.'s Reply 20 (citing Ex. C, Decl. of David Sonenshine). In addition, Ms. Brass explains that not only has she eliminated 290.2 hours of attorney time in the exercise of billing judgment, but also this case was more complex than the government recognizes due to the interaction between the VASRD, the Wounded Warrior Act, and the Navy manual. Pl.'s Reply 21. Finally, Ms. Brass identifies another military pay case where the plaintiff was awarded significantly more fees and expenses than the government claims is appropriate for a "routine" military pay case. Id. (citing Prochazka v. United States, 116 Fed. Cl. 444 (2014)).[6]

    The court has reviewed the hours claimed and agrees with the government that Ms. Brass's request is not well justified and is excessive. In particular, the court finds that the decision to employ nine attorneys on this matter, including five who spent

---

[6] The court has reviewed Prochazka, 116 Fed. Cl. at 444, and finds that the case involved two rounds of briefing on the merits, including court initiated requests for briefs. Thus, the case involved significantly more attorney time than required in this instance. Indeed, in Prochazka, the government objected only to the request for fees associated with the court's inquiry into whether that case should have been categorized as a class action. Id. at 457.

significant time, together with a law clerk, has not been justified. The court has reviewed the time sheets for each attorney and finds that they include many hours of what appears to be redundant reviewing of drafts or doing research that may or may not have been necessary to support the work of the attorney of record, Mr. Pollack. Following a review of the timesheets, the court has no way of discerning whether the many hours identified for research were not duplicative of the work Mr. Pollack was doing. Nor can the court discern why so many attorneys were reviewing Mr. Pollack's work. This case, which involved reviewing records and regulations, was not so complex as to warrant the attention of nine or even five attorneys, given the substantial amount of time Mr. Pollack devoted to this case. While it is permissible for multiple attorneys to collaborate on a case, courts will reduce fee awards when the party seeking fees for multiple attorneys fails to explain each lawyer's distinct contribution in detail. See, e.g., Baldridge v. Nicholson, 19 Vet. App. 227, 239 (2005) ("An application for fees under EAJA where multiple attorneys are involved must also explain the role of each lawyer in the litigation and the tasks assigned to each, thereby describing the distinct contribution of each counsel." (citing Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J., 297 F.3d 253, 272 (3rd Cir. 2002))). The party applying for fees bears the burden of justifying that each attorney's work was not duplicative. Id. at 238. As the D.C. Circuit stated in Role Models, 353 F.3d at 972, "[p]erhaps something about this case required so many lawyers expending so many hours. But because the time records contain so little information, we have no basis for concluding that the hours that appear to be excessive and redundant are in fact anything other than excessive and redundant." Here, after reviewing the time

16

sheets provided, the court finds that partners and associates in Mr. Pollack's firm failed to set out their distinct contributions and thus the court finds that the hours appear to be excessive and redundant and the reward of attorney fees must be reduced.

Based on the court's review of the time reported in detail, the court finds that it is appropriate to award the fees sought for Mr. Pollack's time. As Mr. Pollack was the attorney of record on the case prior to argument on this EAJA petition, the court accepts that the time he spent researching, writing, and preparing for the argument was justified. As the attorney of record, Mr. Pollack bore ultimate responsibility for the case, including the argument on the merits, and the court will not second guess the time he needed to prepare and present his case. Thus, the court finds that Ms. Brass is entitled to recover 256.6 hours of attorney time at $190.95 per hour for work on securing the relief she sought in this case. In addition, the court finds that the 13.8 hours of time Mr. Sonenshine identified and the 3 hours of time identified by Mr. Stichman to prepare the EAJA petition are both supported.

While the total number of hours the court is willing to accept is higher than those accepted in similar cases, such as Wollman, 2015 WL 4939619, at *5 (137.2 hours), Loomis, 74 Fed. Cl. at 359 (185 hours), and Gonzalez, 44 Fed. Cl. at 771 (126 hours), the court acknowledges that Mr. Pollack needed to address comments and coordinate with other members of his firm.

### 3. Allowable Costs

Ms. Brass claims $400 for the court's filing fee, $50.30 for duplication charges, and $3,317.83 for legal research charges, for a total of $3,768.13 in costs. Pl.'s Mot. 16.

The government argues that Ms. Brass has failed to explain, justify, or document the proposed expenses for legal research. Def.'s Resp. 24. However, the government does not cite any authority requiring additional information or specify what additional information the court should require. In her reply, Ms. Brass reiterates her request for $3,768.13 in litigation expenses but does not provide additional detail regarding the legal research charges. Pl.'s Reply 14.

The court agrees with Ms. Brass that the claimed legal research costs are allowable. The government does not dispute that Ms. Brass's claimed legal research charges are allowable under the EAJA and provides no basis for reducing the award of such costs. See, e.g., Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988) (allowing recovery of "telephone, reasonable travel, postage, and computerized research expenses . . . under the EAJA"), aff'd sub nom. Jean, 496 U.S. at 154); see also Hyperion, Inc. v. United States, 118 Fed. Cl. 540, 548 (2014) ("Fees for filing, electronic legal research, transcripts, photocopying, postage, and couriers are consistently held to be recoverable under EAJA." (citations omitted)); United Partition Sys., Inc., 95 Fed. Cl. at 61 (awarding undisputed legal research expenses).

### 4.   Reduction to Reflect Partial Success on the Merits

The government argues that Ms. Brass's EAJA award should be further reduced to reflect her limited success on the merits in this case. Def.'s Resp. 24-25 (citing Farrar v. Hobby, 506 U.S. 103, 115 (1992); Hensley v. Eckerhart, 461 U.S. 424, 436 (1983); Hubbard v. United States, 480 F.3d 1327, 1333 (Fed. Cir. 2007)). Specifically, the

government asserts that Ms. Brass has not been awarded any of the military retired pay she sought because that pay would be less than her VA disability benefits. Def.'s Resp. 26 (citing Def.'s Resp. App'x 33, 35; 38 U.S.C. § 5305). In addition, the government argues that Ms. Brass was not owed any retired back pay because the unrecouped portion of her disability severance pay exceeded the retired back pay that she would have otherwise been owed. Def.'s Resp. 26 (citing Def.'s Resp. App'x 33, 35). The government recognizes that Ms. Brass may receive other benefits associated with a military retirement, such as medical and dental care in military facilities and eligibility for TRICARE, the military's health care program, but argues that those benefits do not justify Ms. Brass's requested award of attorneys' fees and costs under the EAJA. Def.'s Resp. 26-27.

Ms. Brass contends that she received all of the relief she sought in this case and her complete success calls for a full fee award. Pl.'s Reply 15. She argues that "as a result of her success in this lawsuit, the military may pay her over her lifetime in the future hundreds of thousands of dollars in military disability retired pay" in the event the VA reduces her disability rating. Pl.'s Reply 16.[7] Ms. Brass also argues that while the government denigrates Ms. Brass's military benefits, this court previously observed that "[t]he difference between" the 10% disability rating that the Navy assigned to Ms. Brass and the relief provided as a result of this lawsuit "is large: the 10% rating entitled Ms.

---

[7] Ms. Brass does not dispute that she is not entitled to receive military retired pay and disability compensation from the VA at the same time. Pl.'s Reply 16 (citing 38 U.S.C. §§ 5304-05).

Brass to a one-time payment of $51,414, while a 30% rating would entitle her to monthly disability payments, medical care for life, and military commissary and exchange privileges."  Pl.'s Reply 17 (citing Brass, 120 Fed. Cl. at 158).

The court agrees with Ms. Brass that she has received all that she sought in this litigation and is now guaranteed that should the VA reduce her disability rating at some future date, she will be entitled to military disability retired pay.  The court will also not denigrate the additional benefits identified above, including the medical care that she and her minor children may now receive.  The court does not find a basis to further reduce Ms. Brass's EAJA award based on the fact that she is receiving VA benefits.

## V. CONCLUSION

For the reasons above, Ms. Brass's motion for attorneys' fees and costs pursuant to the EAJA is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The parties shall submit a proposed final judgment consistent with this opinion by **August 31, 2016**.

**IT IS SO ORDERED.**

s/Nancy B. Firestone  
NANCY B. FIRESTONE  
Senior Judge